630 P.2d 269

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Mark MABRY, Defendant-Appellant.**

**No. 13146.**

Supreme Court of New Mexico.

July 2, 1981.

318

Martha A. Daly, Appellate Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Heidi Topp Brooks, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

EASLEY, Chief Justice.

Mabry was convicted of first-degree murder. He was sentenced to life imprisonment as mandated by Section 31–18–3(A), N.M.S.A.1978 (now repealed). He appeals from his conviction and sentence. We affirm.

Mabry raises three issues: (1) whether the mandatory nature of the sentence imposed violates the doctrine of separation of powers or constitutes cruel and unusual punishment; (2) whether the question of Mabry's competency to stand trial should have been submitted to the jury; and (3) whether Mabry was entitled to a new trial in light of newly-discovered evidence.

Mabry was charged on an open count of murder for the death of his adoptive mother. A pre-trial hearing was held on the issue of his competency to stand trial. At the hearing, a court clinic psychiatrist testified to his opinion that Mabry was competent. The psychiatrist also testified that Mabry denied any memory of the offense, suffered from both psychological and alcoholic problems that would affect his memory, and had a marked capacity to block out or repress anything painful or distasteful. Based upon the psychiatrist's testimony, the trial court found beyond a reasonable doubt that Mabry was competent to stand trial, and thus this issue was not presented to the jury.

At trial, the defense did not deny or dispute that Mabry committed the act for which he was charged, but relied entirely on a defense of insanity. Evidence presented of insanity included specific instances of bizarre behavior by Mabry, evidence that he had been the victim of extreme physical abuse by his natural mother prior to his adoption at the age of five months, and the testimony of two court psychiatrists. One of the psychiatrists concluded that Mabry was probably psychotic on the day of the murder; the other concluded that he was suffering from schizophrenia which caused him to go into an uncontrollable rage at the time of the crime, as a result of which he did not know what he was doing, did not understand the consequences of his acts, and could not have prevented himself from committing those acts.

The State rebutted this evidence with the testimony of two psychiatrists. One testified that Mabry suffered from an anti-social disorder which caused him to have difficulty preventing himself from doing wrong, but still allowed him to distinguish right from wrong and to appreciate the consequences of his actions. The other psychiatrist testified that Mabry suffered from a schizoid personality which caused him to be detached and withdrawn and to think differently from the way others think. Although he did not believe Mabry was more subject to irresistible impulses than others, he recognized that Mabry had "a large reservoir of anger" and no vehicle to deal with it.

The jury returned a verdict finding Mabry guilty of first-degree murder. Prior to sentencing, Mabry was committed to the penitentiary for a sixty-day diagnostic evaluation. Sometime later, a sentence of life imprisonment was imposed.

Mabry thereafter filed a motion for a new trial on the basis of newly-discovered evidence. At the hearing on this motion, Dr. Marc Orner, head of psychiatric and psychological services at the penitentiary, testified that during the sixty-day diagnostic evaluation, Mabry told the staff that as a young child he had been sexually abused by his adoptive mother (the victim). The motion for new trial was denied by the trial court.

Mabry then brought a motion for reconsideration of sentence on two grounds. First, he contended that the mandatory nature of the sentence was unconstitutional as a violation of the separation of powers clause in the state and federal constitutions. Second, Mabry asserted that the sentence imposed, under the facts of this case, constituted cruel and unusual punishment. In support of this contention, he submitted affidavits from each of the four mental health experts who testified at trial. Each expert declared that Mabry has serious

mental and psychological problems that require treatment in a mental hospital, rather than the penitentiary. The State responded that Mabry had failed to show that adequate psychiatric treatment would not be available at the penitentiary.

The trial judge denied the motion, but expressed his personal belief that the mandatory nature of the sentencing statute violated the separation of powers doctrine and urged counsel to seek appellate review of the question. As to the second ground, he ruled that the facts presented were insufficient to establish cruel and unusual punishment.

## I. CONSTITUTIONALITY OF SENTENCE

### A. Separation of Powers.

■ Section 31–18–3(A), N.M.S.A.1978, provides that upon conviction for a crime constituting a first-degree felony, "the judge shall sentence such person to the term of life imprisonment in the penitentiary * * * *" Section 31–20–3, N.M.S.A. 1978, allows the trial judge to defer or suspend, in certain circumstances, the sentence prescribed by law for "any crime not constituting a capital or first degree felony." Under this statutory scheme, imposition of a life sentence for a first degree felony cannot be deferred or suspended by the trial judge.

Mabry's contention relies upon two propositions, both of which are minority views among American jurisdictions: (1) that the judiciary possessed, at common law, the inherent power to suspend sentence; (2) that this inherent power is an integral part of the judicial department and cannot, therefore, be abrogated by the Legislature consistent with the constitutional mandate of separation of powers contained in N.M. Const. Art. III, Section 1.

The vast majority of jurisdictions which have considered the question whether the courts have the inherent power to suspend sentences have answered in the negative. See cases collected in Annot., 73 A.L.R.3d 474, § 3 (1976). A leading case is Ex Parte

United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916), in which the Supreme Court held that federal courts do not have the power, absent authorization by Congress, to indefinitely suspend a sentence on good behavior. The Court examined common law authorities and found no support for the proposition that courts at common law had the inherent authority to suspend sentences indefinitely.

Some courts adopting the minority position have examined the same common law authorities reviewed in Ex Parte United States and reached the opposite conclusion, i. e., that courts at common law possessed inherent authority to indefinitely suspend sentence. See State v. McCoy, 94 Idaho 236, 486 P.2d 247 (1971); People v. Court of Sessions, 141 N.Y. 288, 36 N.E. 386 (1894).

The only New Mexico case which has considered this question, In re Juan Lujan, 18 N.M. 310, 137 P. 587 (1913), concluded without reviewing the common law history that the court was without power to suspend a sentence absent statutory authorization.

■ We need not enter the historical debate over the ability of common law courts to suspend sentences. Even assuming, arguendo, that our courts would have possessed such a power at common law, that power has long been defined and delimited by statute in New Mexico. See, e. g., 1909 N.M.Laws, ch. 32, § 1. The dispositive question here is whether a legislative act making a sentence mandatory, and thus denying any right of the courts to suspend sentences, violates the doctrine of separation of powers. We hold that it does not.

Mabry cites State v. McCoy, 94 Idaho 236, 486 P.2d 247 (1971), which apparently stands alone, and against the great weight of authority in the United States, in holding that mandatory sentencing laws violate the constitutional doctrine of separation of powers. See Annot., 73 A.L.R.3d 474 (1976). The Idaho Supreme Court in McCoy, expounded at length on the desirability of mandatory sentencing laws:

Our system of laws, indeed, hopefully our civilization, has undergone a persevering

evolution toward enlightenment. A judge is more than just a finder of fact or an executioner of the inexorable rule of law. Ideally, he is also the keeper of the conscience of the law. It is for this reason that the courts are given discretion in sentencing, even in the most serious felony cases, and the power to grant probation. We recognize that rehabilitation, particularly of first offenders, should usually be the initial consideration in the imposition of the criminal sanction. Whether this can be better accomplished through the penal system or some other means, it can best be achieved by one fully advised of all the facts particularly concerning the defendant in each case and not by a body far removed from these considerations * * * * This statute * * * not only abrogates the power of the court to suspend sentence when the circumstances and good conscience might justify such action; it also removes any authority to impose a lighter sentence.

486 P.2d at 251.

These may be persuasive arguments against the wisdom of mandatory sentencing statutes that remove judicial discretion. However, this Court does not sit as a super-legislature with the power to uphold or strike down the laws of the state based upon our own judgment as to the wisdom and propriety of such laws. *See In re McCain*, 84 N.M. 657, 506 P.2d 1204 (1973). So long as the Legislature acts within the parameters of its constitutional powers and limitations, this Court is powerless to intercede. *Id.*

■ Thus the scope of our review is here limited to whether the Legislature had the power to enact these statutes. It has long been recognized in this state that it is solely within the province of the Legislature to establish penalties for criminal behavior. *See State v. Archibeque*, 95 N.M. 411, 622 P.2d 1031 (1981); *State v. Holland*, 91 N.M. 386, 574 P.2d 605 (Ct.App.1978). It therefore follows as a necessary incident of this power that the Legislature has the right to regulate or restrict the circumstances in which courts may suspend sentences in or-der to ensure the efficacy of those criminal penalties. *See Ex Parte United States, supra.* As noted by the Supreme Court in *Ex Parte United States:*

[I]f it be that the plain legislative command fixing a specific punishment for crime is subject to be permanently set aside by an implied judicial power upon considerations extraneous to the legality of the conviction, it would seem necessarily to follow that there could be likewise implied a discretionary authority to permanently refuse to try a criminal charge because of the conclusion that a particular act made criminal by law ought not to be treated as criminal. And thus it would come to pass that the possession by the judicial department of power to permanently refuse to enforce a law would result in the destruction of the conceded powers of the other departments and hence leave no law to be enforced.

242 U.S. at 42, 37 S.Ct. at 74.

If the doctrine of separation of powers requires anything in this case, it is that the Legislature be allowed to place some restrictions on the ability of the judiciary to avoid imposing legislatively-mandated penalties for crimes by indefinitely suspending sentences. *See Ex Parte United States, supra; Neal v. State*, 104 Ga. 509, 30 S.E. 858 (1898); *Ex Parte Thornberry* 300 Mo. 661, 254 S.W. 1087 (1923); *State v. Eighth Judicial Dist. Court*, 85 Nev. 485, 457 P.2d 217 (1969).

We hold that the mandatory sentencing under Sections 31–18–3 and 31–20–3 does not violate the doctrine of separation of powers contained in Article III, Section 1 of the New Mexico Constitution.

### B. *Cruel and Unusual Punishment.*

■ Mabry does not assert that a mandatory life sentence for conviction of first-degree murder is *per se* cruel and unusual punishment. Rather, he contends that it constitutes cruel and unusual punishment to condemn one who suffers from serious mental and psychological problems to incarceration in the state penitentiary, because he will not receive adequate treatment.

Mabry does not direct us to any authority for this proposition, and we have found none. Furthermore, Mabry has failed to prove the factual assertions of the premise. Although there is sufficient evidence that Mabry has mental and psychological problems that should be treated, he directs us to no evidence in the record that adequate treatment will not be forthcoming at the penitentiary.

## II. COMPETENCY TO STAND TRIAL

The trial court ruled that there was no reasonable doubt that Mabry was competent to stand trial, and did not allow this question to go to the jury. We will not overturn this ruling except for an abuse of discretion. *State v. Noble*, 90 N.M. 360, 563 P.2d 1153 (1977).

Under *State v. Upton*, 60 N.M. 205, 290 P.2d 440 (1955), the defendant is competent to stand trial if he has the capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to the proceedings, and to make a rational defense. Mabry focuses on the last element and contends that, based upon the psychiatrist's testimony that he had psychological problems which affected his memory and his ability to recall the events in question, he could not adequately assist his counsel in preparing his defense. Mabry asserts that the trial court therefore erred in not allowing this question to go to the jury.

■ We have reviewed the record and find no abuse of discretion. The psychiatrist who testified as to Mabry's memory problems also testified that it was his opinion that Mabry was competent to stand trial under all elements of the *Upton* test. This testimony was uncontroverted.

The situation here is factually similar to that presented in *Upton, supra*. In *Upton*, a psychiatrist testified that though the defendant had a mental disease which caused him to be a pathological liar, he was sane and competent in the eyes of the law. Defense counsel contended that the defendant would be unable to conduct his own defense because he would be unable to tell the

truth. The Court upheld the trial court's ruling that the defendant was competent beyond a reasonable doubt based upon the psychiatrist's unequivocal testimony that the defendant was sane.

Similarly, in the instant case, Mabry might be unable to fully apprise his counsel of the events and circumstances in question. Nevertheless, the uncontroverted testimony established that he had the capacity to understand the nature and object of the proceedings and his condition in reference to the proceedings, and to cooperate with defense counsel in preparing a rational defense. We find no abuse of discretion.

## III. MOTION FOR NEW TRIAL.

■ A motion for new trial on the basis of newly-discovered evidence is properly denied unless the newly-discovered evidence is such that (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such that it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory. *State v. Ramirez*, 79 N.M. 475, 444 P.2d 986 (1968). The discretion of the trial court will not be lightly interfered with, and the denial of a new trial will not be overturned but for a clear abuse of discretion. *State v. Fuentes*, 67 N.M. 31, 351 P.2d 209 (1960).

■ We find no abuse of discretion. The "newly-discovered" evidence in this case fails the *Ramirez* test on a number of points. Mabry's claim that he had been sexually abused by the victim, his adoptive mother, as a young child, can hardly be said to have been discovered since the trial or that it is evidence that could not have been discovered prior to trial by the exercise of due diligence. Presumably, Mabry possessed this information prior to trial, and simply did not reveal the information to defense counsel. To hold that such information constitutes newly-discovered evidence requiring a new trial would subject

every criminal trial to the possibility of reopening on the ground that the defendant "remembered" something after trial. It would work havoc on the system if we held that information possessed by the defendant during the trial is "newly-discovered" when revealed by him after the trial.

Furthermore, there is no indication that Mabry's allegation, if proven, would change the result. Mabry relied on a defense that he was insane at the time he killed his mother. The evidence here might indicate a possible reason for Mabry's psychological problems, but would not constitute additional evidence that he was, in fact, legally insane at the time he committed the crime.

The conviction and sentence of Mark Mabry for first-degree murder is affirmed.

IT IS SO ORDERED.

PAYNE and RIORDAN, JJ., concur.