# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-018

Filing Date: February 22, 2018

Docket No. S-1-SC-36127

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

SHANAH CHADWICK-MCNALLY,

       Defendant-Appellant.

INTERLOCUTORY APPEAL FROM THE DISTRICT COURT OF
SAN JUAN COUNTY
John A. Dean, Jr., District Judge

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**NAKAMURA, Chief Justice**

**{1}**     Defendant Shanah Chadwick-McNally is charged with an open count of first-degree murder and faces a potential sentence of life without the possibility of release or parole (LWOP). She argues in this interlocutory appeal that, due to her possible LWOP sentence, she must be afforded the heightened procedural protections that apply when the State seeks the death penalty. *See, e.g.*, Rule 5-704 NMRA (setting forth procedures that must be followed in death penalty cases).

**{2}**     We hold that death penalty procedures do not apply in this case for the simple reason

that "[t]he extraordinary penalty of death" is not implicated. *See, e.g.*, *State v. Martinez*, 2002-NMSC-008, ¶ 8, 132 N.M. 32, 43 P.3d 1042 ("The extraordinary penalty of death demands heightened scrutiny of its imposition."). Consequently, we agree with the district court that Rule 5-704 does not apply and that Defendant is not entitled to a hearing under *State v. Ogden*, 1994-NMSC-029, 118 N.M. 234, 880 P.2d 845, to test whether the alleged aggravating circumstances are supported by probable cause. We also agree that the Capital Felony Sentencing Act (the Act) as amended in 2009 neither requires nor prohibits bifurcated guilt and sentencing proceedings. NMSA 1978, §§ 31-20A-1 to -6 (1979, as amended through 2009). Lastly, we conclude that the Act precludes consideration of evidence of mitigating circumstances for sentencing purposes. We affirm and remand for proceedings consistent with this opinion.

## I.  BACKGROUND

**{3}**    The State charged Defendant with an open count of first-degree murder, a "capital felony," *see* NMSA 1978, § 30-2-1(A) (1994), and with one count each of first-degree kidnapping, robbery, and conspiracy to commit robbery. The charging document specifically alleged two aggravating circumstances related to the first-degree murder charge: (1) Defendant committed the murder with the intent to kill in the commission of or attempt to commit kidnapping, and (2) Defendant committed the murder for the purpose of preventing the victim from testifying about the crime. *See* § 31-20A-5 (setting forth seven aggravating circumstances for which a defendant found guilty of a capital felony shall be sentenced to LWOP under Section 31-20A-2).

**{4}**    The State later sought guidance about whether the procedures that apply in death penalty proceedings would be required in Defendant's case, in which the State is seeking an LWOP sentence. The State argued that death penalty procedures are inapplicable because Rule 5-704 applies only to death penalty cases and because the 2009 amendments to the Act repealed most of the procedural protections that had applied when the death penalty was in force, including bifurcated guilt and sentencing proceedings and the consideration of mitigating circumstances. The State conceded, however, that "prosecutors in other New Mexico judicial districts . . . have apparently been utilizing death penalty procedures and Rule 5-704 in LWOP cases."

**{5}**    After the pretrial conference, the district court issued an order holding that death penalty procedures do not apply in Defendant's case and that Defendant is precluded from presenting evidence of mitigating circumstances to the jury. The court also found that the order involved "a controlling question of law as to whether defendants in capital felony cases facing the possibility of life without parole should be afforded the procedural safeguards provided, under Rule 5-704 or other law, to defendants facing a possible death sentence."

**{6}**    Defendant filed an application for interlocutory appeal under Rule 12-203(A) NMRA, which we granted. We have jurisdiction under Article VI, Section 2 of the New Mexico Constitution and NMSA 1978, Section 39-3-3(A)(3) (1972). *See State v. Smallwood*, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821 (holding that this Court has "jurisdiction over interlocutory appeals in situations where a defendant may possibly be

sentenced to life imprisonment or death").

## II.  DISCUSSION

**{7}**   Our analysis proceeds in two parts.  We first briefly review the 2009 amendments to the Act and Rule 5-704.  We then address Defendant's arguments about the procedures that must be followed when the State seeks an LWOP sentence.

### A.  The 2009 Amendments to the Act and Rule 5-704

**{8}**   New Mexico abolished the death penalty in 2009 for crimes committed on or after July 1, 2009.  *See* 2009 N.M. Laws, ch. 11, §§ 5-7.  In place of the death penalty, the 2009 law established a new maximum sentence for defendants convicted of a capital felony:  "life imprisonment without possibility of release or parole[,]" abbreviated in this opinion as LWOP.  Section 31-20A-2; *see also* NMSA 1978, § 31-21-10(C) (2009) ("An inmate of an institution who was sentenced to life imprisonment without possibility of release or parole is not eligible for parole and shall remain incarcerated for the entirety of the inmate's natural life.").

**{9}**   The 2009 legislation also repealed much of the Act as it had existed when the death penalty was in force.  *See* 2009 N.M. Laws, ch. 11, § 5 (repealing Sections 31-20A-1, -2.1 through -4, and -6).  The repealed provisions guaranteed certain procedural safeguards for defendants who faced a possible death sentence, including separate, bifurcated guilt and sentencing proceedings; the weighing of aggravating and mitigating circumstances to determine whether the defendant should be sentenced to death or life imprisonment; and automatic appellate review of any case in which the defendant was sentenced to death.  *See generally* §§ 31-20A-1 to -6 (1979, as amended through 1991).  New Mexico originally adopted these safeguards after the United States Supreme Court held that statutes with similar protections "withstood constitutional scrutiny" in death penalty proceedings.  *See State v. Garcia*, 1983-NMSC-008, ¶ 25, 99 N.M. 771, 664 P.2d 969 (noting that Sections 31-20A-1 to -6 "were modeled after similar statutes . . . [that] have withstood constitutional scrutiny by the United States Supreme Court").

**{10}**   As a result of the 2009 law, the Act now consists of just two provisions. Section 31-20A-5 sets forth the aggravating circumstances that must be proven, in addition to the defendant's guilt of the underlying capital felony, if the State chooses to seek an LWOP sentence.  And Section 31-20A-2 prescribes how a defendant convicted of a capital felony shall be sentenced—whether to life imprisonment or LWOP—based on a finding of at least one aggravating circumstance.

**{11}**   Death penalty proceedings are also subject to Rule 5-704.  The rule incorporates the procedures formerly required under the Act when the death penalty was in effect, *see, e.g.*, Rule 5-704(D)(1) (providing that the procedures set forth in Section 31-20A-1 shall be followed unless the defendant requests separate juries for trial and sentencing purposes), and imposes additional procedures that must be followed when the state seeks the death penalty.  *E.g.*, Rule 5-704(C) ("The defendant in a death penalty case must be represented by at least

two (2) attorneys . . . .").

**{12}** This Court amended Rule 5-704 shortly after the death penalty was abolished. *In re Death Penalty Sentencing Jury Rules*, 2009-NMSC-052, 147 N.M. 302, 222 P.3d 674. In our order approving the amendments, we acknowledged that the death penalty had been abolished, but we also noted that "the death penalty remains a sentencing option for a limited number of cases alleging crimes committed before July 1, 2009." *Id.* So, in response to "concerns expressed by the Governor, the Legislature, and others regarding the death penalty system in New Mexico," we approved amendments to Rule 5-704 that established additional procedures that apply in death penalty proceedings. *Id.*; *e.g.*, Rule 5-704(D) (setting forth procedures for "separate trial and sentencing juries" upon notice from a defendant who "may be punished upon conviction by the penalty of death"). Notably, the amended rule makes no reference to an LWOP sentence.

## B.      Whether Death Penalty Procedures Apply in This Case

**{13}** With this context in hand, we turn to the four issues presented. First, whether Rule 5-704 applies in this case. Second, if Rule 5-704 does not apply, whether Defendant is entitled to "comparable procedures," including a hearing to determine whether the State's alleged aggravating circumstances are supported by probable cause. Third, whether the Act expressly prohibits bifurcated proceedings and whether Defendant should be permitted to "reserve consideration" of the aggravating circumstances until after the jury has considered her guilt or innocence. And finally, whether the sentencing scheme under the Act precludes the presentation of evidence of mitigating circumstances in this case and whether such an interpretation would violate the federal or state constitutions. These are questions of law, and our review is de novo. *AFSCME Council 18 v. State*, 2013-NMCA-106, ¶ 6, 314 P.3d 674.

### 1.      Rule 5-704 Applicability

**{14}** Whether Rule 5-704 applies in this case is not a difficult question. The rule's language—and indeed its very title, "Death penalty; sentencing,"—establishes its singular application to death penalty cases. *See generally* Rule 5-704 (using the words "death penalty" twenty times throughout the rule without reference to an LWOP sentence and repeatedly referring to the sentence of death). More substantively, the rule's numerous procedural requirements reflect the constitutional principle that death penalty cases are different. *Martinez*, 2002-NMSC-008, ¶ 8 (citing *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality opinion) ("Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two."))

**{15}** Defendant has not cited, nor are we aware of, any authority that would require applying Rule 5-704 to this case, in which the State is seeking an LWOP sentence and not the death penalty. Absent a constitutional or legislative directive, we will not impose the rule's considerable demands more broadly than they were intended. We decline to extend the application of Rule 5-704 to this case.

## 2. Comparable Procedures

**{16}** Next, Defendant argues that if Rule 5-704 does not apply in this case, the district court "at a minimum" must hold a hearing under *Ogden* to determine whether the alleged aggravating circumstances are "inapplicable or insufficiently supported." We disagree.

**{17}** We held in *Ogden* that "[a] defendant who has been notified that the State will seek the death penalty may move to dismiss an aggravating circumstance before trial." 1994-NMSC-029, ¶ 15. To effectuate that right, we authorized district courts to "conduct a limited evidentiary hearing" to determine whether "there is probable cause to believe an aggravating circumstance is present." *Id.* ¶ 17-18. We later amended Rule 5-704 to make the procedure mandatory in death penalty cases. *See* Rule 5-704(B) NMRA (2004) ("No later than ninety (90) days prior to trial, the court shall hold a hearing to determine whether or not there is probable cause to believe that one or more aggravating circumstances exist.").

**{18}** *Ogden* was premised on "[o]ur view that it is important to curtail unwarranted death-penalty prosecutions . . . [because] they are qualitatively and quantitatively distinct from other criminal proceedings." 1994-NMSC-029, ¶ 10. We noted that death penalty prosecutions and sentencing command extra judicial resources; are uniquely complex and demanding; require bifurcated proceedings, a death-qualified jury, more skilled and experienced prosecutors and defenders, and extensive investigation into the defendant's background for proof of mitigating circumstances; and entail significant pretrial motions, applications, and hearings. *Id.* ¶¶ 11-12.

**{19}** The considerations that we credited in *Ogden* do not carry the same force when, as in this case, the heightened procedural requirements and complexities of a death penalty proceeding are not present. Put simply, the State's decision to seek an LWOP sentence does not invoke the unique complexities and demands of a death penalty case. The district court therefore correctly determined in Defendant's case that a hearing is not warranted under *Ogden* as the State is not seeking the death penalty.

## 3. Bifurcated Proceedings

**{20}** Defendant argues that the sentencing scheme under the Act does not expressly prohibit bifurcation. Defendant also argues, as a matter of public policy, that parties should be permitted "to reserve consideration of aggravating factors for a subsequent hearing following the guilt-innocence phase" in LWOP cases.

**{21}** Unlike when the death penalty was in force, the Act is now otherwise silent about the procedures that must be followed in a case like Defendant's, including whether bifurcated guilt and sentencing proceedings are permitted or required. *See* §§ 31-20A-2, -5. "We do not read language into the Act that is not there." *State v. Wyrostek*, 1994-NMSC-042, ¶ 17, 117 N.M. 514, 873 P.2d 260. We follow our previous holdings on this question and decline to require or permit bifurcated proceedings *as a matter of course* "absent a clear directive from the Constitution." *State v. Rudy B.*, 2010-NMSC-045, ¶ 58, 149 N.M. 22, 243 P.3d 726; *see State v. Luna*, 1980-NMSC-009, ¶ 23, 93 N.M. 773, 606 P.2d 183 (concluding that due

process does not require bifurcation of guilt and insanity proceedings), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 130, app. A (1990).

**{22}** Whether bifurcated proceedings are appropriate must be determined on a case-by-case basis, after the issue has been properly raised and argued under the Rules of Criminal Procedure for the District Courts. *See* Rule 5-601(B) NMRA ("Any defense, objection or request which is capable of determination without a trial on the merits may be raised before trial by motion."); *cf.* Rule 5-203(C) NMRA (providing that a district court "may order separate trials of offenses . . . or provide whatever other relief justice requires" when it "appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants").

## 4. Evidence of Mitigating Circumstances

**{23}** Defendant argues that the sentencing scheme under the Act does not prohibit the presentation of mitigating evidence. Defendant also argues that the district court's conclusion that the Act does not permit evidence of mitigating circumstances violates the United States and New Mexico Constitutions. We disagree with both arguments.

**{24}** "'A trial court's power to sentence is derived exclusively from statute.'" *State v. Chavarria*, 2009-NMSC-020, ¶ 12, 146 N.M. 251, 208 P.3d 896 (quoting *State v. Martinez*, 1998-NMSC-023, ¶ 12, 126 N.M. 39, 966 P.2d 747). "This limitation on judicial authority reflects the separation of powers notion that 'it is solely within the province of the Legislature to establish penalties for criminal behavior.'" *Martinez*, 1998-NMSC-023, ¶ 12 (quoting *State v. Mabry*, 1981-NMSC-067, ¶ 18, 96 N.M. 317, 630 P.2d 269). "This Court must construe statutes, if possible, to give effect to their objective and purpose and to avoid absurd results." *State v. Begay*, 2017-NMSC-009, ¶ 9, 390 P.3d 168. "The primary indicator of legislative intent is the plain language of the statute." *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863.

**{25}** The plain language of Section 31-20A-2, as amended in 2009, is unequivocal with respect to sentencing:

> If a jury finds, beyond a reasonable doubt, that one or more aggravating circumstances exist, . . . the defendant *shall* be sentenced to life imprisonment without possibility of release or parole. If the jury does not make the finding that one or more aggravating circumstances exist, the defendant *shall* be sentenced to life imprisonment.

(Emphasis added.) Under the statute's plain language, the determinative factors are the jury's findings of guilt and of one or more aggravating circumstances. When both findings are present, an LWOP sentence is mandatory and cannot be mitigated. *See State v. Cabezuela*, 2015-NMSC-016, ¶ 11, 350 P.3d 1145 ("Mandatory life sentences, with or without the possibility of parole after thirty years, are for capital felonies and are not subject to mitigation." (citing *State v. Juan*, 2010-NMSC-041, ¶ 42, 148 N.M. 747, 242 P.3d 314)). Neither the district court nor the jury has discretion to deviate from the statute's command.

*See* NMSA 1978, § 12-2A-4(A) (1997) ("'Shall' . . . express[es] a duty, obligation, requirement or condition precedent."). The inability to exercise any sentencing discretion precludes the admission of mitigating evidence for sentencing purposes. The district court correctly concluded that Defendant is precluded under the Act from presenting evidence of mitigating circumstances for sentencing purposes. Defendant's constitutional arguments do not cause us to doubt this conclusion.

**{26}**     Defendant argues that interpreting the Act to preclude the introduction of mitigating evidence would be contrary to an "emerging Eighth and Fourteenth Amendment categorical approach" holding mandatory LWOP sentences to be unconstitutional for juvenile offenders. *See Miller v. Alabama*, 567 U.S. 460, 465 (2012) ("[M]andatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"). Defendant's reliance on federal authorities that apply to juvenile offenders is misplaced.

**{27}**     The United States Supreme Court in *Harmelin v. Michigan* considered whether the imposition of a mandatory LWOP sentence without consideration of "so-called mitigating factors," was cruel and unusual punishment under the Eighth Amendment. 501 U.S. 957, 994 (1991). The Court determined that imposition of the mandatory LWOP sentence was not cruel and unusual punishment as the individualized sentencing requirements imposed in death penalty proceedings do not extend to non-death penalty proceedings. *Id.* at 995-96. Applied to this case, *Harmelin* establishes that the Act does not violate the Eighth Amendment by imposing a mandatory LWOP sentence without consideration of an adult defendant's "individualized" or mitigating circumstances.

**{28}**     Defendant argues that *Harmelin*'s continued validity is in doubt because of more recent cases addressing the constitutionality of mandatory LWOP sentences for juveniles. *E.g.*, *Miller*, 567 U.S. at 465 (holding that a mandatory LWOP sentence for a juvenile violates the Eighth Amendment). These cases are readily distinguishable. They result from the Court's determination that "children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471; *see also Roper v. Simmons*, 543 U.S. 551, 575 (2005) (holding that the death penalty for juvenile offenders violates the Eighth Amendment). Nothing in these cases undermines *Harmelin*'s holding with regard to LWOP sentences for adults. *See* Michael M. O'Hear, *Not Just Kid Stuff? Extending Graham and Miller to Adults*, 78 Mo. L. Rev. 1087, 1088 (2013) (concluding that *Graham* and *Miller* "do not provide much basis for sweeping reversals of adult LWOP sentences"). Defendant's federal constitutional rights were not violated by the district court's decision to preclude her from presenting evidence of mitigating circumstances.

**{29}**     Defendant argues in the alternative that she is entitled to greater protections under the New Mexico Constitution. We do not reach this issue because Defendant did not cite any authority in the district court to support her general assertion that she is entitled to greater protections under the state constitution. *See State v. Leyva*, 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861 (reviewing requirements for preserving a state constitutional claim for appellate review).

## III.    CONCLUSION

**{30}**    We affirm that neither Rule 5-704 nor *Ogden* apply in this case.  We further affirm that Defendant may not introduce evidence of mitigating circumstances for sentencing purposes.  We remand for further proceedings consistent with this opinion. On remand, Defendant may pursue bifurcation under the rules of criminal procedure if she wishes to do so.  This opinion has no bearing on her entitlement to bifurcation.

**{31}    IT IS SO ORDERED.**

_____

**JUDITH K. NAKAMURA, Chief Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**