1997-NMCA-091

946 P.2d 210

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Chester CLAH, Defendant–Appellee.**

No. 17222.

Court of Appeals of New Mexico.

June 4, 1997.

Certiorari Denied Sept. 8, 1997.

Tom .Udall, Attorney General, Margaret Mclean Assistant Attorney General, Santa Fe, for Plaintiff–Appellant.

T. Glenn Ellington, Chief Public Defender, Bruce Rogoff, Appellate Defender, Santa Fe, for Defendant–Appellee.

## OPINION

BUSTAMANTE, Judge.

1. In this case we address whether: (1) presentence confinement credit against a felony DWI jail sentence may be given for time spent in an inpatient alcohol treatment program; and (2) credit may be allowed for time to be spent after sentencing in an inpatient post-traumatic stress disorder treatment program. We reverse the presentence credit allowed by the trial court and affirm as to suspension of Defendant's sentence conditioned upon attendance at the treatment facility.

## FACTS AND PROCEEDINGS

2. Defendant Chester Clah (Defendant) was arrested on May 27, 1995 and charged with driving under the influence of alcohol for the fourth time, a fourth degree felony offense under NMSA 1978, Section 66–8–102(G) (Repl.Pamp.1994). Defendant was released from custody on his own recognizance on June 9, 1995 pending trial. On August 7, 1995 Defendant voluntarily entered the Gallup Veterans Transition Center Substance Abuse Treatment Program on an inpatient basis. He was released from the program on August 29, 1995, apparently in accordance with the admission plan.

3. On October 17, 1995 the Defendant pleaded guilty to the felony DWI offense with which he was originally charged. The trial court ordered a presentence report and scheduled sentencing for December 11, 1995. On December 11, the trial court entered a Commitment Order requiring Defendant to commence serving his term of imprisonment in the San Juan County Detention Center on December 27, 1995. Defendant appeared as ordered and started serving his sentence on December 27. The trial court did not enter a formal judgment and sentence until February 6, 1996.

4. Prior to entry of the formal order of judgment and sentence, Defendant filed a motion seeking a temporary release from jail in order to allow him to attend a specialized inpatient post-traumatic stress unit at a veteran's hospital in Denver, Colorado. The trial court granted the motion, releasing Defendant on his own recognizance to enroll in the program. The order, entered January 10, 1996, required Defendant to return to the San Juan County Detention Center within twelve hours of his release from the hospital. The trial court retained the discretion to modify the order at any time, and provided that "if Defendant does not follow the conditions of this Order, Defendant may be rearrested."

5. The order of judgment and sentence entered on February 6, 1996, sentenced Defendant to the New Mexico Department of Corrections for a period of eighteen months but suspended a portion and required Defendant to serve 364 days in the San Juan

County Detention Center, followed by a twelve month supervised probation. In addition, the judgment and sentence gave Defendant "credit" for jail time as follows:

1. Twenty–One (21) days for previous time served in the San Juan County Detention Center for said crime;

2. Twenty–Three (23) days for time spent at Gallup Veterans' Transition Center Substance Abuse Inpatient Treatment Program; and

3. Time Defendant will spend in the Specialized Inpatient Post–Traumatic Stress Unit at the Denver Veterans' Affairs Medical Center commencing January 16, 1996.

6. Finally, the Order authorized work release for Defendant, presumably pursuant to NMSA 1978, Section 33–3–24 (Repl. Pamp.1990). The State challenges only the grant of credit for the presentence and post-sentence time spent in the inpatient treatment programs.

*PRESENTENCE CREDIT*

7. The State argues vigorously that the trial court mistakenly treated the screening and treatment provisions of Section 66–8–102(H) as alternative sentencing options in lieu of the jail term required by Section 66–8–102(G). The State's position is that the mandatory jail term of Section 66–8–102(G) may not be decreased by participation in the discretionary rehabilitation scheme envisioned by Section 66–8–102(H). In addition, the State argues that the inpatient treatment program Defendant attended is simply not sufficiently jail-like to be deemed incarceration within the meaning of Section 66–8–102(G).

8. Defendant responds by analogizing Defendant's inpatient treatment to a hospital stay, asserting that New Mexico "gives credit for time spent in the state hospital, and in hospitals, so long as it has been ordered by the court" citing *State v. La Badie,* 87 N.M. 391, 534 P.2d 483 (Ct.App.1975) and *State v. Watchman,* 111 N.M. 727, 809 P.2d 641 (Ct. App.1991), *overruled on other grounds as recognized in State v. Hosteen,* 122 N.M. 228, 232, 923 P.2d 595, 599 (Ct.App.1996), *cert. granted,* 122 N.M. 227, 923 P.2d 594 (1996). We resolve the issue in favor of the State.

9. We start our analysis with NMSA 1978, Section 31–20–12 (Repl.Pamp.1994), New Mexico's felony presentence confinement credit statute (curiously ignored by the parties) which provides: "A person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." The statute mandates that Defendant be given credit for any time he is held in "official confinement" prior to conviction and sentence. The basic question then is whether the inpatient treatment time qualifies as "official confinement."

10. This question cannot be answered by looking solely at the DWI statute. Recent amendments to New Mexico's DWI laws signal a clear intent by the legislature to stiffen penalties for DWI offenses, including increased sentences and mandatory jail time. For example, Section 66–8–102(G) elevated the level of the crime to a felony for fourth and subsequent offenses, increased minimum punishment to a jail term of not less than six months and provided that this mandatory term may "not be suspended or deferred or taken under advisement." By limiting suspension and deferral of sentence, the legislature significantly curtailed judicial discretion in sentencing otherwise generally available under NMSA 1978, Section 31–20–3 (Repl. Pamp.1994). In addition, the legislature recently eliminated good time accrual for the mandatory portion of a sentence imposed pursuant to the provisions of Section 66–8–102. NMSA 1978, § 33–3–9(B) (Cum.Supp. 1996). However, none of these amendments dealt specifically with the application of presentence confinement credit under Section 31–20–12 to DWI felony offenses.

11. Section 31–20–12 was enacted in 1967 and has been in effect since then without alteration. We assume the legislature is aware of existing law when it undertakes to amend its own statutes. *See Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 227, 668 P.2d 1101, 1104 (1983). As already noted, Section 31–20–12 requires that credit be given for time spent in official

confinement. Presentence confinement credit is a matter of right and, thus, different from suspension and deferral of sentences which are clearly not matters of right, but rather are committed to the discretion of the court as acts of judicial clemency. *See State v. Sosa*, 122 N.M. 446, 449, 926 P.2d 299, 302 (1996). It is settled law in this jurisdiction that a suspended sentence is a matter of judicial clemency to which a defendant may never claim entitlement. *Id.* at 448, 926 P.2d at 301. Given that presentence confinement credit is conceptually distinct from suspension and deferral, we can only conclude that the legislature intended to continue to allow presentence credit against felony DWI sentences for time spent in official confinement.

▮ 12. We thus return to the basic question posed above: What qualifies as official confinement for purposes of Section 31–20–12? Time spent actually incarcerated in a municipal or county jail and time spent in a state correctional facility obviously qualify. However, actual incarceration in a jail facility has not been deemed an absolute prerequisite under the statute. *La Badie*, 87 N.M. at 393, 534 P.2d at 485; *Watchman*, 111 N.M. at 735, 809 P.2d at 649. In *La Badie*, this court held that time spent "under maximum security conditions" at the state mental hospital was "official confinement" under the statute. 87 N.M. at 393, 534 P.2d at 485. In *La Badie*, the defendant was found to be incompetent to stand trial as a result of mental disease. Under a statute in effect at the time, La Badie was required to be committed to the State Hospital until the court found him once again competent to stand trial. The statute provided that " '[d]efendants committed under this section shall be treated as other patients committed involuntarily to the New Mexico state hospital except that they may not be released from custody without an order of the court.' " *Id.* (quoting NMSA 1953, § 41–13–3.1 (2d. Repl. Vol. 6)).

13. The trial court refused to allow a presentence credit for approximately 450 days spent by La Badie in the hospital because the trial court equated the confinement with an involuntary commitment for mental illness. Noting that the legislature had au-

thorized the credit without limiting it to a particular place of confinement, this Court held that the combination of the court order requiring Defendant to be held on the felony charge until he was competent to stand trial and the conditions of his retention were enough to constitute "official confinement." We agree with this analysis and result, and to the extent adoption of the State's position would require reversal, we decline to accept it. *See State v. Fellhauer*, 123 N.M. 476, 478–79, 943 P.2d 123, 125–26 (App.1997).

▮ 14. Upholding *La Badie* does not carry the day for Defendant, however. There are clear legal and factual distinctions between Defendant's participation in the Gallup inpatient alcohol treatment program and La Badie's commitment to the State Hospital. First, there is no indication in the record here that the trial court ordered or required Defendant to enroll in the program. The record indicates Defendant was released on his own recognizance on June 16, and on August 4 requested a continuance of a scheduled trial on the DWI charge so he could attend the program. The trial court's only involvement was to grant the continuance. Second, there were no court imposed conditions under which Defendant would attend, nor was there any limitation on his ability to leave the program. The program was not required as a condition of release or probation, and there were no adverse legal consequences to Defendant if he failed to complete the program. For example, Defendant would not be subject to being charged with escape if he left the program early because he had not yet been committed to a jail or penitentiary and was not in the custody of peace officers while in the program. *See* NMSA 1978, §§ 30–22–8 to –10 (Repl. Pamp.1994).

15. In short, the State did not require Defendant's participation in the program and exercised no control over him while he was in the program. Under these circumstances, we cannot agree that Defendant's time in the program can be deemed official confinement, no matter how strict the design of the program, because there was no "official" act by the State requiring his attendance and because there was literally no "confinement" by

the State. Given that Defendant's participation in the Gallup program cannot be considered official confinement under any interpretation of the term, we are not required in this case to explore the limits of the concept. *See Fellhauer,* 123 N.M. 476, 943 P.2d 123. (describing circumstances under which time outside jail or prison facility may qualify as official confinement).

16. Finally, *Watchman* is of no aid to Defendant. In *Watchman,* defendant was hospitalized as a result of injuries he received in an automobile collision apparently caused by his intoxication. Defendant in *Watchman* sought credit for the time he spent in the hospital asserting that because he could not leave the hospital—either because he was under arrest or otherwise had a "hold" imposed on him—he was confined within the meaning of Section 31–20–12. *Watchman,* 111 N.M. at 735, 809 P.2d at 649. The matter was remanded by this Court for factual findings to determine if the defendant was "taken into official custody or placed under arrest". We entered no decision on the merits of the request, except to observe that under *La Badie,* hospitalization did not preclude awarding the credit. As already noted, Defendant here was not under arrest or subject to any control by the State while in the program.

*POSTSENTENCE OFFSET*

17. The trial court granted "credit" for the time Defendant would spend in the post-traumatic stress unit at a veteran's hospital in Denver. We note initially that use of the term "credit" in the order is improper. "Credit" is normally used only to refer to reductions applied under Section 31–20–12 for presentence confinement and for time spent on probation when a sentence is imposed after the conditions of probation are violated. *See* NMSA § 31–21–15(B) (Repl. Pamp.1994). Defendant's attendance at the post-traumatic stress unit was allowed and occurred after Defendant started serving his sentence on December 27, 1995. As such, it could not be considered a presentence credit in any event, and the cases discussed above apply only obliquely, if at all.

18. Instead, the direct issue before us is whether the trial court had the discretion as a matter of sentencing authority to allow an offset of some kind for the postsentence time Defendant spent in the post-traumatic stress unit. Viewing the issue from this perspective, we believe the trial court had the discretion to allow what in essence is a period of qualified or conditional suspension equal to the time spent in the program, so long as it did not impinge on the mandatory portion of the sentence required by Section 66–8–102(G) which is a sentence "to a jail term of not less than six months" without suspension or deferment. The parties agree that even if Defendant is given credit for the time spent in treatment, he will still serve more than six months in jail. Thus, there is no interference here with the mandatory term of incarceration.

19. Of course, courts may only impose sentences authorized by statutes. *See State v. Mares,* 119 N.M. 48, 51, 888 P.2d 930, 933 (1994). Upon entry of a judgment of conviction, the court has four basic options: (1) sentence the defendant, executing the sentence by committing him to jail or prison, NMSA 1978, Section 31–20–2 (Repl. Pamp.1994); (2) defer imposition of sentence, Section 31–20–3(A); (3) sentence the defendant and suspend in whole or in part execution of the sentence, Section 31–20–3(B); or (4) commit the defendant to a period of diagnosis prior to sentencing, Section 31–20–3(C). As we noted in *State v. Sinyard,* 100 N.M. 694, 697, 675 P.2d 426, 429 (Ct.App.1983), "[r]ead in their entirety, the sentencing statutes evidence a legislative intent that the trial court have a wide variety of options by which to sentence." Within the limitations of the provision prescribing the punishment for a particular offense, the trial court has discretion to structure the sentence to best fit the defendant and the crime. We believe that discretion is broad enough to support a suspension of sentence premised on a requirement that the defendant attend psychological and medical treatment programs, even if the period of suspension occurs while defendant is serving the basic jail sentence imposed, as occurred here.

20. In sum, the trial court could not grant a credit, in the strict sense, for the time spent in the Denver facility. However, this misnomer should not deprive the trial court of its discretionary ability to grant a suspension of the sentence equal to the period of treatment; nor should it deprive the Defendant of the trial court's act of clemency in this regard. Ignoring the label used by the trial court, the offset granted for the Denver treatment should be affirmed to the extent it does not interfere with Defendant serving the six-month mandatory sentence required by Section 66–8–102(G). *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) (trial court decision that reaches the correct result for the wrong reason may be affirmed if not fact dependent).

21. The grant of credit for the presentence alcohol treatment is reversed. The postsentence offset, treated as a suspension with conditions, is affirmed.

22. IT IS SO ORDERED.

BOSSON and ARMIJO, JJ., concur.