2005-NMCA-047

111 P.3d 229

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jesse OTTO, Defendant–Appellant.**

**No. 23,280.**

Court of Appeals of New Mexico.

March 18, 2005.

Certiorari Granted, No. 29,158,
April 26, 2005.

372

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant appeals his conviction for Criminal Sexual Penetration of a Minor (CSPM) committed against his stepdaughter (the child). He challenges the admissibility and effect of evidence contained in the second of two videotapes. In this second videotape, the child testified about similar conduct Defendant had perpetrated against her. These similar acts by Defendant had occurred *after* the conduct that was charged in this case and took place in Colorado (the Colorado acts). Defendant was not charged or on trial for the Colorado acts, only for acts that took place earlier when the family lived in Alamogordo, New Mexico (the Alamogor-

do or charged acts). Defendant also asserts that the trial court erroneously allowed Kimberly Otto, his former wife and the mother of the child (Mother), to testify concerning statements the child had made to her that Defendant had penetrated the child with his fingers in Colorado. Finally, Defendant appeals the trial court's aggravation of his sentence by six years as an abuse of discretion.

{2} We hold that the use of the uncharged Colorado acts as evidence of the charged Alamogordo acts in this context is contrary to Rule 11–404(B) NMRA. Similarly, Mother may not testify as to what the child told her about the inadmissible Colorado acts. In this case, this evidence crossed the line from proper use of evidence of other bad acts to impermissible evidence of Defendant's propensity to commit the crime with which he was charged. Additionally, we hold the admission of this evidence is more prejudicial than useful for a proper purpose; we accordingly reverse Defendant's conviction and remand for a new trial.

{3} As we are remanding for a new trial, at which Defendant may or may not be convicted, we need not address the sentencing issue. We note, however, that we recently held that sentences may not be increased on the basis of aggravating circumstances unless those circumstances are found by the jury beyond a reasonable doubt. *See State v. Frawley*, 2005–NMCA–017, 137 N.M. 18, 106 P.3d 580, *cert. granted State v. Frawley*, 2005–NMCERT–002, —— N.M. ——, 110 P.3d 74 [No. 29,011 (Feb. 8, 2005)].

FACTS

{4} The child testified by video deposition that Defendant penetrated her with his fingers while she was sleeping in bed between Defendant and Mother. This occurred in Alamogordo, in September or October of 2000. Mother also testified that while living in Alamogordo, Defendant had told her that he did not want the child sleeping in bed with him because he had awakened fondling the child. Mother testified that she took his statement to mean the child's vaginal area. At that time, Mother did not report the incident because Defendant promised that it would not happen again.

{5} Shortly after this incident, Defendant and Mother moved to Colorado. The child soon came to live with them. Mother testified that after they had moved to Colorado, she had seen Defendant and the child in bed together. When Mother asked the child about what had happened, the child said to her that "[Defendant] comes in there just about every night" and that Defendant digitally penetrated her on these occasions. Mother then confronted Defendant about this accusation and in the course of a conversation that lasted about an hour and a half, Defendant cried and said he was sorry. Mother would later report the incidents to police.

{6} Defendant was charged with CSPM for the Alamogordo acts. Following his arrest, Defendant gave a statement to Detective Sanchez of the Otero County Sheriff's Department. Detective Sanchez would later testify at trial that Defendant admitted having had contact with the child's vaginal area that was "pretty damn close" to penetration, but did not remember any digital penetration taking place. According to Detective Sanchez, Defendant stated that, at the time the incident happened, he was "ready to finger [the child] but he woke up but he didn't think that he did." Detective Sanchez also said that when Defendant was questioned about the fact that the child claimed to have been penetrated and asked if she would lie, Defendant said that he did not believe the child would lie. Defendant said he knew the child had told the truth.

{7} Prior to trial, Defendant argued that although Mother could testify about the discussion she had had with Defendant regarding the sexual abuse in Colorado, she could not testify about the child's statements that had precipitated this conversation. Defendant asserted that such statements were hearsay and inadmissible. Defendant conceded that Mother's conversation with him and his admissions in those conversations were all admissible. The trial court ruled that, subject to a limiting instruction informing the jury that the child's statements were not offered for their truth but to allow the jury "the complete picture as to how this all

unfolded," Mother could testify to the child's statements to her about the Colorado acts.

{8} The child gave a two-part videotaped deposition in January 2002. The first tape concerned events that transpired in Alamogordo between September and October 2000; in the second tape the child testified to the similar Colorado acts occurring after Christmas of that year. Defendant sought to exclude the second videotape. The State sought to have the child's statements about the Colorado acts admitted as evidence under Rule 11–404(B) to show a lack of mistake or accident on Defendant's part and as evidence of his intent. The parties argued over the effect of Defendant's statement that he had come "pretty damn close" to penetrating the child, the State urging that this statement left "some room for interpretation" regarding the issue of whether Defendant knowingly engaged in the Alamogordo acts. The State further argued that this statement showed that Defendant had "sought out the child" to repeat his conduct, which abuse then continued on an almost daily basis. Defendant countered that his defense was not rooted in any mistake but in different facts, namely that what had occurred was no more than contact, and not penetration. The trial court allowed the admission of the child's testimony concerning Defendant's actions in Colorado, ruling that "what went on in Colorado is part of this whole picture, that cannot be presented properly without all the pieces of the puzzle and all pieces of the picture," and that its probative value would not be outweighed by its prejudicial effect.

{9} Trial commenced, Defendant's motion in limine was denied, and the evidence of the Colorado acts was presented. The State presented both halves of the child's deposition before calling Mother as a witness. The only other State witnesses were a state patrol officer, who conducted an initial interview with the child, and Detective Sanchez. The State rested its case, and the defense called no witnesses. Defendant was convicted of first degree CSPM.

## STANDARDS OF REVIEW

{10} We review the admission or exclusion of evidence under Rule 11–404(B) for abuse of the trial court's discretion. *State v.*

*Williams,* 117 N.M. 551, 557, 874 P.2d 12, 18 (1994). We defer to the court's admission of Rule 11–404(B) evidence. *See State v. McGhee,* 103 N.M. 100, 104, 703 P.2d 877, 881 (1985) (stating that "[t]he admission of evidence is within the trial court's discretion and will not be disturbed absent a clear abuse of discretion").

## DISCUSSION

### Admission of the Colorado Acts Was a Wrongful Introduction of Propensity Evidence Unjustified by the Application of Rule 11–404(B)

{11} Defendant was charged with criminal conduct occurring in Alamogordo. The child's deposition concerning that conduct was explicit; his fingers had penetrated her, and it had hurt. Prior to trial, the State made it clear why it wanted to include evidence of his similar conduct in Colorado. Interpreting Defendant's statement that he had not committed an act involving penetration as one in which he was mistaken as to what he had done, the State sought the admission of the child's testimony concerning the later Colorado acts of penetration. The State maintained that the evidence of the Colorado acts showed Defendant's "intent and it shows knowledge that [Defendant] knew what he was doing, and it shows that it's not an accident because in this particular case in Alamogordo, the child had gotten in bed with the parents whereas in Colorado, [Defendant] sought out the child." In its opening statement to the jury, the State was more explicit: "[W]hat happened in September or October of 2000 was not a mistake, it wasn't an accident, but in fact, it was a purposeful, intentional act on the part of [Defendant] *because he continued to do the same thing to her when they moved to Colorado.*" (Emphasis added.)

{12} This view of the evidence was not borne out by the testimony, nor was it the way the case was argued in closing arguments. By the end of trial, the question came down to one of fact. The State said Defendant's finger(s) penetrated the child's vagina while she was between him and his former wife in Alamogordo; the defense said there was no penetration. We now look at

the admission of the testimony about the Colorado acts to see if it was properly admitted, as the trial court believed, as "part of this whole picture, that cannot be presented properly without all the pieces of the puzzle."

### Rule 11–404(B) is a Rule of Exclusion

■ {13} Rule 11–404(B) is fundamentally a rule of exclusion. *Williams,* 117 N.M. at 557, 874 P.2d at 18 (stating that "[t]he purpose of Rule 404(B) is to exclude the admission of character traits to prove that a defendant acted in accordance with those traits"); *but see State v. Jones,* 120 N.M. 185, 187–88, 899 P.2d 1139, 1141–42 (Ct.App.1995) (stating in dicta that in New Mexico, Rule 11–404(B) may be a rule of inclusion, since New Mexico allows more exceptions than those explicitly stated in the Rule). Rule 11–404(B)'s first words that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith" establishes a prohibition against using acts to prove a character trait from which it may then be inferred Defendant followed to commit the present crime. This general prohibition against character evidence is followed by a set of exceptions. The second sentence of Rule 11–404(B) establishes the proper purposes, other than proving character, for which evidence of prior bad acts may be admitted. *See* Rule 11–404(B) (stating in pertinent part that other bad acts may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident"); *State v. Lamure,* 115 N.M. 61, 70, 846 P.2d 1070, 1079 (Ct.App. 1992) (Hartz, J., concurring). "Thus, the issue in New Mexico is whether there is a probative use of the evidence that is not based on the proposition that a bad person is more likely to commit a crime." *Jones,* 120 N.M. at 188, 899 P.2d at 1142. Yet even these admissible exceptions to "bad acts" evidence are subject to another general qualifier: prejudice to Defendant. Using Rule 11–404(B) to admit evidence requires its proponent to affirmatively demonstrate the consequential fact to which the proffered evidence is directed. *State v. Lucero,* 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct.App.1992).

After the proponent has made an adequate showing, the court must then also be satisfied that the probative value is not "substantially outweighed" by other considerations. *Id.* (internal quotation marks and citation omitted).

■ {14} Because evidence that Defendant acted in accordance with a propensity would be exceedingly probative evidence if admitted, even permitted uses of "bad acts" evidence are tempered in turn by the application of Rule 11–403 NMRA. Rule 11–403 requires a balancing of the evidence between its probative value and potentially prejudicial effect. *State v. Ruiz,* 2001–NMCA–097, ¶ 15, 131 N.M. 241, 34 P.3d 630. We recognize "the grave risk of unfair prejudice when evidence of multiple bad acts is introduced in a single trial." *Id.* ¶ 14. Rule 11–403 reinforces the very purpose of Rule 11–404(B). This purpose is to protect a defendant from the circumstantial use of other bad acts to establish a character trait or propensity that might be given more weight by the jury than it deserves, and might lead a fact finder to punish the defendant because he is a bad person. *Ruiz,* 2001–NMCA–097, ¶ 13, 131 N.M. 241, 34 P.3d 630. We hold that both rules were violated in this case, for the reasons below.

### Denial Versus Mistake; Fact Versus Intent

{15} Factual probity—whether a prior bad act shows a basis to believe that a fact exists—is easily confused with the assertion of an element of character. Issues of fact must be separated from issues of character. The factual propositions for which other bad acts may be admissible are those which give rise to an inference of the defendant's involvement or identity as the culprit; that the evidence sought to be admitted negates an attempt by the defendant to disassociate him- or herself from the crime. The exceptions to Rule 11–404(B) exist to reel the defendant back into the case. *See, e.g., Martin v. State,* 144 S.W.3d 29, 31 (Tex.Ct.App. 2004) (stating that Rule 11–404(B) evidence must tend to "establish some elemental fact, such as identity or intent; that it tends to

establish some evidentiary fact, such as motive, opportunity, or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g., absence of mistake or accident"). Showing that a criminal defendant possessed motive or opportunity to commit the crime, that the crime was committed with a unique factual signature (modus operandi) associated with the defendant, or that extrinsic evidence shows a defendant's knowledge of the criminality of the act alleged (lack of mistake) are all ways intended to factually connect the defendant to the commission of or intent to commit a crime. Where a defendant concedes that he committed a criminal act, but disputes which one, such connection is not probative.

■ {16} In this case, despite the prosecution's assertions, Defendant did not allege a mistake as to the character of his actions. At no point in the trial did Defendant deny having had contact with the child's genitals. Defendant asserted that what had occurred was sexual contact with the child but not penetration, which is a factual proposition. In the course of the trial, sufficient evidence of Defendant's factual proposition was presented to justify the trial court's giving a jury instruction on criminal sexual contact as a lesser included offense of CSPM. The court also gave instructions factually distinguishing penetration into the child's vagina from contact with the child's vulva as elements of each offense, respectively, as well as an instruction providing separate definitions of "vagina" and "vulva." Clearly, the difference between sexual penetration and sexual contact, and external and internal anatomy, were well enough factually developed by the evidence to justify these instructions. With the uncontested admission of evidence from the child and other witnesses such as Detective Sanchez, the factual issues of contact versus penetration were well developed. The question presented by Defendant was factual—simply, while in Alamogordo did he commit one criminal act or the other? Not in issue was whether he did what he did accidentally or by mistake. In *Ruiz*, the defendant asserted that the events never happened or the girls accusing him were mistaken in their perceptions, and the State attempted to counter the defense with evidence of other acts. *Ruiz*, 2001–NMCA–097, ¶ 17, 131 N.M. 241, 34 P.3d 630. There, the use of the other acts was found to violate Rule 11–404(B), as being no more than evidence of the defendant acting in conformity with his propensity to molest girls, as is the case here. *Ruiz*, 2001–NMCA–097, ¶ 18, 131 N.M. 241, 34 P.3d 630.

{17} Furthermore, though we sympathized in *Ruiz* with the State's desire to bolster its victims' testimony,

the need to bolster the victim's credibility, and the belief that sex crimes alone are more likely to follow a pattern based on the unique psychological profile of a likely perpetrator, are not recognized exceptions for admissibility under Rule 11–404(B), and they do not justify manipulating the categories in the rule to accommodate prior bad acts evidence.

*Id.* ¶ 19 (internal quotation marks and citation omitted).

{18} The State's use of the Colorado acts to, as it alleged, establish that Defendant committed the Alamogordo crime "because" he repeated it later was wrong, and the evidence should have been excluded. "Testimony which amounts to evidence of a defendant's bad character or disposition to commit the crime charged is clearly inadmissible." *Lucero*, 114 N.M. at 492, 840 P.2d at 1258.

■ {19} Even if the evidence was offered, as it was accepted by the trial court, to show the "context" of other admissible facts, the Colorado acts as used at trial were intended by the State to show that Defendant had committed the act "because" he committed other similar acts at a later date. The "context" as set by the State at trial does no more than amount to character or propensity evidence to allow an inference of conformity of behavior. We have stated that "[w]hile we recognize the potential difficulty in prosecuting [CSPM] cases, then, we do not believe the appropriate solution is to wink at the dictates of Rule [11–]404(B)." *Id.* at 494, 840 P.2d at 1260. Furthermore, this use of the Colorado acts is unduly prejudicial and Rule 11–403 should eliminate this evidence from admissibility. *See* Rule 11–403 (stating that

even relevant evidence will be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury"). Additionally, there was a contextual difference between the Alamogordo acts and the Colorado acts—the Colorado acts involved allegations that Defendant purposely "sought out" the child to commit sexual acts, where in Alamogordo, the acts occurred after the child had climbed into bed between Defendant and Mother. To admit the Colorado acts, then, admits the implication of the added circumstantial element that the State used: That Defendant "sought out" the child to repeat his conduct. The invitation provided by the court to show "the complete picture as to how this all unfolds" is therefore a green light to expand both the nature and effect of the evidence beyond its probative value.

■ {20} Where a defendant does no more than create a factual dispute where the issue is believability, other bad acts should not be admissible for the reasons stated above. The trial court therefore abused its discretion by failing to exclude them. "When there is error in admitting the other-crimes evidence under [Rule] 11–404(B), prejudice is established when there are convictions." *Jones,* 120 N.M. at 190, 899 P.2d at 1144.

{21} The State now argues that the videotape deposition and hearsay could have been properly admitted as evidence of Defendant's lewd and licentious disposition. As mentioned above, Rule 11–404(B) evidence of other bad acts must be tendered with specific reference to its purpose and the basis for its relevancy. *Lucero,* 114 N.M. at 492, 840 P.2d at 1258. Such use was not proffered by the State at trial. Further, we have recognized lewd and licentious disposition evidence as "nothing more than a euphemism for the character evidence which [Rule 11–404(B) is] designed to exclude." *Id.* at 492–93, 840 P.2d at 1258–59. In this case, Defendant's behavior progressed, at worst, from the opportunistic to the intentional. That he later "sought out" the child to commit sexual acts is more prejudicial than probative of his acts in Alamogordo that were alleged to be of a much different character. For either reason, lack of specific proffer, or the tipping of the

balance toward prejudice from probative use, the State's urging adoption of this evidence of lewd and licentious disposition is misplaced. This is especially so in cases of child sexual abuse, as we pointed out in *Lucero. Id.* at 493–94, 840 P.2d at 1259–60.

**The Trial Court's Limiting Instruction Was Insufficient to Insulate Defendant from the Prejudice Resulting from the Admission of the Child's Statements to Mother**

{22} The trial court also admitted the child's statements to her Mother that Defendant had penetrated her with his fingers for "contextual" purposes, doing so while also giving a limiting instruction. Specifically, Mother testified that after she saw Defendant in bed with the child, she asked the child "what he was doing in there." The child replied that Defendant came in about every night. Mother asked "does he do anything?" and when the child reluctantly said yes, Mother had proceeded to question the child as to whether Defendant touched her and touched her in her private parts. She then asked "what does he do?" The child answered "he sticks his finger inside me and wiggles it around and it hurts mom and I don't like it."

{23} Shortly thereafter, Defendant's counsel reminded the trial court of its intention to give a cautionary instruction. The trial court informed the jury what hearsay was, and that it normally was not admissible evidence. The court further stated that an exception to the hearsay rule exists when the hearsay is offered for a limited purpose of showing what the person who heard the statement did in response to or reliance on the statement. The court then instructed the jury to "consider the statements of the child through Mother for the limited purpose only of explaining or supporting what Mother did in response or reaction to that and not for the truth of the child's statements to [M]other."

■ {24} Again, we review the admission of these statements for an abuse of discretion and reverse only when a defendant is prejudiced thereby. *State v. Worley,* 100 N.M. 720, 723, 725, 676 P.2d 247, 250, 252 (1984). Here, the trial court informed the jury that

the statement made by the child to Mother was hearsay. A statement not offered for its truth, "but for such legitimate purposes as that of establishing knowledge, belief, good faith, reasonableness, motive, effect on the hearer or reader," is not hearsay, and is admissible. *State v. Rosales,* 2004–NMSC–022, ¶ 16, 136 N.M. 25, 94 P.3d 768 (internal quotation marks, citation, and emphasis omitted). In this context, the details of the alleged act are virtually impossible to separate from their use as mere evidence that the description of the acts was uttered.

## CONCLUSION

{25} We reverse the trial court and remand for further proceedings consistent with this opinion.

{26} **IT IS SO ORDERED.**

I CONCUR: A. JOSEPH ALARID, Judge.

LYNN PICKARD, Judge (dissenting).

PICKARD, Judge (dissenting).

{27} I respectfully dissent from the majority opinion. I believe that the majority (1) has taken the State's argument below for admission of the evidence out of context and (2) has improperly rested its rationale (a) on the incomplete justification articulated by the trial judge, as opposed to justifications that can be lawfully articulated based on the facts and evidence adduced below, and (b) on Defendant's argument to the jury, as opposed to the evidence introduced below from which the jury could draw inferences that could be properly rebutted by evidence of the Colorado acts. I explain.

{28} First, the majority concentrates on one sentence in the State's opening argument, during which the State used a shorthand version of its contention—that what happened in Alamogordo was not an accident or a mistake, but instead was intentional and purposeful "because" Defendant continued to do the same thing in Colorado. This shorthand version did not do justice to the State's argument that it articulated to the trial court during the hearing on the motion in limine and during its closing argument. That argu-

ment concentrated on Defendant's statement made to the police, in which he claimed that he was "ready to finger" the child, but woke up and did not think that he did, and that he might have come close to penetration, but did not remember any penetration. The State argued that this statement was ambiguous and subject to interpretation as to Defendant's knowledge of what he was doing and his intent. It appeared that Defendant was telling the police that what he did might have been done in his sleep without his conscious intent and whatever he did, he stopped it as soon as he awoke and realized what he was doing. As the State argued in closing argument, the Colorado acts "tell[ ] you that [what Defendant did in Alamogordo] was unlawful and intentional. It was not an accident that [D]efendant did that on that first occasion. You know, not like he was in his sleep or anything, because this is something that continued to occur."

{29} Second, in my view, the majority has violated one cardinal rule of appellate procedure and one basic rule of criminal law in resting its decision on the trial court's inartful articulation of why it was allowing admission of the evidence and on the defense's tactical concession to the jury that Defendant committed contact but not penetration. The rule of appellate procedure is that an appellate court "will affirm a trial court's decision reaching a correct result, even though the reason offered to support the result is wrong." *Moore v. Sun Pub'g Corp.,* 118 N.M. 375, 379, 881 P.2d 735, 739 (Ct.App. 1994). This rule applies equally to criminal cases. *See State v. Clah,* 1997–NMCA–091, ¶ 20, 124 N.M. 6, 946 P.2d 210; *State v. Urban,* 108 N.M. 744, 747, 779 P.2d 121, 124 (Ct.App.1989). This rule is subject to an exception, in that the rule will not be applied when it would be unfair to an appellant to apply it, such as when the issue being reviewed is fact dependent and the failure to give the correct reason below deprived the appellant of the opportunity to offer facts that would show the potential error of the allegedly correct reason. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). The exception does not apply here. Nor do those cases in which we have been reluctant to apply the rule because we

really do not know how the trial court would have exercised its discretion had it not been mistaken as to the law. *See State v. Salgado,* 112 N.M. 793, 796, 819 P.2d 1351, 1354 (Ct. App.1991). In this case, the rationale articulated by the trial court was that the jury should be aware of the complete picture. This rationale was, at most, incomplete. The trial court could well have been correct in thinking that the jurors should be aware of why Defendant cried and apologized to his wife in Colorado. Otherwise, they would not understand and appreciate the strength of Defendant's admissions. But there were additional reasons why the evidence was properly admissible under Rule 11–404(B). The trial court having found that the jury should be aware of the whole picture and, having found that unfair prejudice did not outweigh probative value, it is virtually certain that the trial court would have admitted the evidence for these additional reasons as well.

{30} The rule of criminal law is that we do not limit the State's presentation of evidence to the narrow question of what a defendant has expressly put in issue. For example, we routinely uphold the admission of gory photographs even though a defendant concedes that the victim is dead or died in a particular way. *See, e.g., State v. Hernandez,* 115 N.M. 6, 19, 846 P.2d 312, 325 (1993); *State v. Stephens,* 93 N.M. 368, 370, 600 P.2d 820, 822 (1979); *State v. Upton,* 60 N.M. 205, 210, 290 P.2d 440, 442–43 (1955). Moreover, we apply this principle in the context of the admission of Rule 11–404(B) evidence. *See State v. Martinez,* 1999–NMSC–018, ¶¶ 30–34, 127 N.M. 207, 979 P.2d 718 (holding Rule 11–404(B) evidence admissible and not excluded by Rule 11–403 because a defendant's offers to stipulate do not bind the state to the sanitized way that the defendant wants the case presented); *State v. Nguyen,* 1997–NMCA–037, ¶¶ 6–11, 123 N.M. 290, 939 P.2d 1098 (indicating, among other things, that the defendant's willingness to stipulate that mistake or accident would not be defenses does not mean that the state does not have to prove intent and it may do so by offering other bad acts evidence).

{31} Our Rule 11–404(B) jurisprudence permits the admission of other bad acts evidence if there is an "articulation or identification of the consequential fact to which the proffered evidence of other acts is directed." *Jones,* 120 N.M. at 187, 899 P.2d at 1141. Moreover, the articulation should not be "based on the proposition that a bad person is more likely to commit a crime." *See id.* at 188, 899 P.2d at 1142. Here, the evidence of the Colorado acts satisfies this test. The consequential facts were intent, lack of accident, mistake, and knowledge of what Defendant was doing, all put in issue by Defendant's statement to the police. Moreover, the fact that the defense tactic was to admit that Defendant committed contact and urge the jury to convict of the lesser included offense did not mean that the jury would necessarily do so. With the evidence and inferences available from Defendant's own statement, the jurors could easily have believed that whatever Defendant did, he did in his sleep and stopped as soon as he was awake and aware. The State should have the right to rebut Defendant's statements as long as it can do so consistently with the rules of evidence.

{32} Because I believe that the State did rebut Defendant's statements consistently with the rules of evidence in this case, even though the majority has utilized certain statements by the trial judge and the prosecutor that make it seem that those rules were violated, I would affirm Defendant's conviction. The rule requiring cases to be affirmed if the correct result is reached, regardless of the rationale articulated below, is one of judicial economy that is designed to spare the system and the people who deal with it the time, expense, and emotions of a new trial where the result would surely be the same. In this case, had the prosecutor and the trial judge more artfully articulated proper Rule 11–404(B) rationales, it appears that the case would have been affirmed. I would not put the judge and the prosecutor through another trial, nor the victim and her family through another emotional ordeal, on the grounds given by the majority. If the true basis of the majority's opinion is not the articulations of the prosecutor or the trial judge, then other bad acts evidence will never be able to be used in child sexual abuse cases, which I do not believe is the law. *See,*

*e.g., State v. Jordan,* 116 N.M. 76, 80–81, 860
P.2d 206, 210–11 (Ct.App.1993).