**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>June 21, 2017</u>

**NO. 35,175**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**JUAN TORRES SANTOS,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

The Elion Law Firm, P.C.
Gary D. Elion
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

{1}    Following a jury trial, Defendant Juan Torres Santos appeals his conviction of one count of sexual exploitation of children (possession), commonly referred to as "possession of child pornography," a fourth degree felony, contrary to NMSA 1978, Section 30-6A-3(A) (2007, amended 2016).[1] He raises two issues, which we have reorganized and address as follows: (1) whether there was sufficient evidence to support the jury's finding that he "intentionally possessed" child pornography; and (2) whether the district court abused its discretion by allowing the State to show video evidence to the jury after Defendant offered to stipulate that the material proposed to be shown was child pornography. We affirm.

**I.    BACKGROUND**

{2}    On March 21, 2014, Special Agent Owen Peña for the New Mexico Internet Crimes Against Children Task Force conducted an undercover online investigation searching for individuals involved with child pornography on the Ares peer-to-peer, file-sharing network. Agent Peña, the State's first witness, was qualified as an expert

---

[1]We note that Section 30-6A-3(A) was amended in early 2016 to increase the penalties for sexual exploitation of children. *Compare* Section 30-6A-3(A) (2007), *with* Section 30-6A-3(A) (2016). All references to Section 30-6A-3(A) in this opinion are to the 2007 version of the statute.

in peer-to-peer networks and explained that the Ares file-sharing network does not operate unless there is material to share in a share folder. In order for a user to be able to download files, the user must be sharing files. While conducting his investigation, Agent Peña connected to a certain Internet protocol (IP) address, later traced to Defendant, and Agent Peña discovered that the user of that IP address had "four files of investigative interest" that may contain child pornography in a publicly shared file. Agent Peña successfully downloaded two videos from Defendant's computer that were available to download. After downloading the videos to his computer, Agent Peña reviewed the videos and burned the files to a disc. Through further investigation, Agent Peña determined that the physical address associated with the IP address was in Albuquerque, New Mexico. He then referred the case to Detective Kyle Hartsock of the Bernalillo County Sheriff's Department.

{3}     The State's next witness, Detective Hartsock, testified about his investigation and was qualified as an expert in computer networks and computer forensics. He determined that Defendant and Defendant's wife lived at the address associated with the IP address. After obtaining a warrant to search the residence, Detective Hartsock and other law enforcement officers executed the search warrant. Detective Hartsock spoke with Defendant and informed him that they were conducting a child pornography investigation. Defendant admitted that he had been downloading child

2

pornography to research "how lesions might appear" on child victims in sexual assault cases. He explained that he was a pediatrician, he had practiced medicine in other states, and he was awaiting a medical license in New Mexico. Defendant also told the detective that he would delete the files "almost immediately" after he watched them, and Defendant admitted that he would get physically aroused when he watched the videos.

{4}     Three laptops, an internal hard drive, and two external hard drives were seized from Defendant's residence and taken to the New Mexico Regional Computer Forensics Laboratory in Albuquerque for forensic examination. Detective Hartsock testified that he found the following on Defendant's laptop: the Ares peer-to-peer file-sharing software; child pornographic videos in the recycle bin folder; child pornographic search terms in unallocated space; and "CCleaner" scrubbing software "designed to clear out files that might have already been deleted, and also it will empty your recycle bin." Eight video files in the recycle bin appeared to be child pornography, and 531 files had been downloaded through Ares into Defendant's shared folder. Although most of the actual files were no longer in the shared folder or on the computer, the names of these files were still listed in history. According to Detective Hartsock, most of the file names were "pornography-related, and most of that pornography ha[d] file names that [the detective] commonly see[s] in child

pornography investigations." Two other witnesses also testified on behalf of the State regarding their computer forensic examinations in this case.

{5} At the close of the State's case, the district court directed a verdict of acquittal as to the two counts of distribution of child pornography against Defendant. The only charge that remained was for one count of possession of child pornography.

{6} Defendant testified on his own behalf and stated that he was from Peru, went to medical school in Peru, did training in Puerto Rico, and had previously worked as a pediatrician in the United States. After he moved to Albuquerque with his wife, who is also a physician, he started looking for employment. He was not successful in finding employment and decided to look at child pornography for research purposes. It was his contention that he downloaded and watched child pornography for research purposes because the medical publications did not sufficiently depict how lesions are formed on child victims of sexual abuse. During the relevant time period, Defendant did not have any patients and was depressed.

{7} Defendant admitted that he had previously installed the Ares software onto his computer to listen to music, then to watch adult videos, and "eventually child pornography." He said that he "found these kind of videos like on accident," and he claimed that he deleted the videos after he watched them. He further testified that he used "CCleaner" to erase all archives and make his computer faster because he liked

4

to watch television stations from Peru on his computer. When asked if he was familiar with the recycle bin on his computer, he said he was familiar with it, he explained that he put things in the recycle bin that he no longer wanted, and he said that he knew how to take things out of the recycle bin. When asked if he had ever taken anything out of the recycle bin, he responded, "Yes. Obviously. Yeah."

{8}     During cross-examination, Defendant admitted that he searched for "PTHC" for child pornography, which means "preteen hardcore," and he searched for "the Gracel Series, which was a series depicting a mom, a dad, and a child having sexual intercourse[.]" He also said that he did not discuss his research with any colleagues because he "didn't know any other physician[s] here." He further testified that he did not think it was necessary to tell his physician wife because his research was "to increase [his] knowledge. That's it."

{9}     Defendant's trial defenses were that he downloaded child pornography for research purposes and that he did not "intentionally possess" child pornography because he deleted the videos after he watched them. The jury was not convinced and found Defendant guilty of possession of child pornography. It is from this conviction that Defendant now appeals.

**II.     DISCUSSION**

**A.     Sufficiency of the Evidence**

{10} Defendant asserts that there was insufficient evidence to support his conviction of possession of child pornography. "Evidence is sufficient to sustain a conviction when there exists substantial evidence of a direct or circumstantial nature to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Smith*, 2016-NMSC-007, ¶ 19, 367 P.3d 420 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted).

{11} The jury was instructed that to convict Defendant of possession of child pornography, the State was required to prove the following four elements beyond a reasonable doubt: (1) "[D]efendant intentionally possessed obscene visual or print medium depicting any prohibited sexual act or simulation of such an act;" (2) "[D]efendant knew or had reason to know that the obscene medium depicted any prohibited sexual act or simulation of such act;" (3) "[D]efendant knew or had reason to know that one or more participants in that act is a child under eighteen years of

6

age;" and (4) "This happened in New Mexico on or between March 21, 2014, and May 13, 2014." *See* § 30-6A-3(A) ("It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age."). The district court further instructed the jury that

> [a] person is in possession of obscene visual or print medium when he knows it is on his person, or in his presence, and he exercises control over it. Even if the obscene visual or print medium is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it. Two or more people can have possession of obscene visual or print medium at the same time. A person's presence in the vicinity of obscene visual or print medium or his knowledge of the existence of the location of the obscene visual or print medium, is not, by itself, possession.

*See* UJI 14-130 NMRA Use Note 1 ("This instruction is designed to be used in any case where 'possession' is an element of the crime and is in issue.").

{12} Defendant challenges only the sufficiency of the evidence with respect to whether he "intentionally possessed" child pornography that was found on his computer. While he admits that "there [was] a pattern of watching a video and then deleting it[,]" he claims that it is not illegal to watch child pornography, and that because he deleted the files after he watched them, there was insufficient evidence to

7

establish that he intentionally possessed child pornography. *But see* 18 U.S.C. § 2252(a)(4)(B) (2012) (criminalizing "knowingly accesses [child pornography] with intent to view"); *United States v. Haymond*, 672 F.3d 948, 954 n.14 (10th Cir. 2012) (explaining that § 2252 was amended in 2008 and discussing the same). It is Defendant's contention that "[d]eleting the materials shows the intent to get rid of the materials"—not an intent to possess the materials.

{13}     The State, on the other hand, contends that Defendant's argument fails because eight videos were found on his personal laptop, still under his control and accessible to him, which is consistent with the jury instruction given in this case. *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). In support of this argument, the State points out that the videos were found in the recycle bin folder, Defendant acknowledged that moving a file into the recycle bin does not permanently delete it, and Defendant admitted that he has recovered files from the recycle bin in the past.

{14}     We agree with the State that there was sufficient evidence to show that Defendant possessed child pornography. By downloading, viewing, and deleting videos on his computer, Defendant possessed those videos. We note that this conclusion is consistent with our discussion in *State v. Ballard*, 2012-NMCA-043,

8

276 P.3d 976, *rev'd on other grounds by State v. Olsson*, 2014-NMSC-012, ¶ 47, 324 P.3d 1230. In *Ballard*, this Court considered whether the defendant's conviction for twenty-five counts of possession of child pornography violated double jeopardy. *Id.* ¶¶ 1-2, 15-32. In discussing the double jeopardy issue, we stated that "initial possession started at the point [the d]efendant completed each digital file download of one or more illicit images." *Id.* ¶ 28, We further stated that "[the d]efendant's possession continued as long as the image remained on his computer or on any external hard drive. The process of downloading and the manner of storage of the files does not complicate the possession analysis." *Id.*

{15} However, "for possession of child pornography to be 'knowing,' a defendant must know the charged images exist." *Haymond*, 672 F.3d at 955. "[D]efendants cannot be convicted for having the ability to control something that they do not even know exists." *United States v. Dobbs*, 629 F.3d 1199, 1207 (10th Cir. 2011). To convict Defendant of possession of child pornography, the State was required to prove that he *intentionally* possessed the videos at issue. *See State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820 ("A defendant's knowledge or intent generally presents a question of fact for a jury to decide.").

{16} Defendant argues that the State failed to meet this burden because the evidence showed that he intended to delete the videos from his computer. Defendant relies on

9

*Dobbs*, 629 F.3d 1199, and *United States v. Bass*, 411 F.3d 1198 (10th Cir. 2005), to support his argument. In *Dobbs*, the defendant was convicted of "knowingly receiving and attempting to receive child pornography in violation of 18 U.S.C. § 2252(a)(2)." *Dobbs*, 629 F.3d at 1200. In the *Dobbs* case, unlike the present case, the defendant's conviction was based on images found exclusively in the cache file of his computer. *Id.* at 1201. The forensic specialist in that case testified that "when a person visits a website, the web browser automatically downloads the images of the web page to the computer's cache . . . regardless of whether they are displayed on the computer's monitor." *Id.* Thus, "a user does not necessarily have to see an image for it to be captured by the computer's automatic-caching function." *Id.* Although there was sufficient evidence to indicate that the defendant in *Dobbs*—or at least his computer—had "received" child pornography, the Tenth Circuit Court of Appeals reversed the defendant's conviction because there was insufficient evidence to establish that he did so "knowingly." *Id.* at 1204, 1209; *see also Haymond*, 672 F.3d at 955-56 (discussing *Dobbs*). Unlike the facts in *Dobbs*, there was sufficient evidence presented in this case that Defendant intentionally downloaded the videos, watched them, and deleted them.

{17}     In *Bass*, the Tenth Circuit upheld the defendant's convictions of five counts of knowing possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B),

10

despite the defendant's contention that he did not know images were being automatically saved to his computer. *Bass*, 411 F.3d at 1200-02; *see id* at 1206 (Kelly, J., concurring in part and dissenting in part). In the *Bass* case, the defendant admitted that he had used two software programs to permanently delete the images because he did not want his mother to see them. *Id.* at 1201. The Tenth Circuit held that the jury could have reasonably inferred that the defendant knew child pornography was automatically saved to his mother's computer because there was evidence that he attempted to remove the images. *Id.* at 1202. Likewise, here, a jury could have reasonably inferred that Defendant intentionally possessed child pornography because there was evidence that he attempted to delete the videos.

{18}     Defendant's reliance on *Dobbs* and *Bass* is unavailing. The facts in *Dobbs* are distinguishable, and *Bass* supports upholding Defendant's conviction in this case. The facts in the present case are much more analogous to those in *Haymond*, a case that neither the State nor Defendant discussed in their briefs.

{19}     In *Haymond*, the Tenth Circuit affirmed the defendant's conviction for one count of possession or attempted possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). *Haymond*, 672 F.3d at 950. In the *Haymond* case, the defendant admitted to searching for and downloading child pornography using LimeWire, "a peer-to-peer file sharing program that allows users to trade computer

files over the Internet" *id*.; there was evidence presented that downloading from LimeWire does not occur automatically; the LimeWire program was found on the defendant's computer; and the government introduced three images of child pornography that an FBI agent found in the defendant's shared LimeWire folder. *Id.* at 956. Similar to the facts in this case, the agent in *Haymond* testified that the defendant "admitted to a pattern of searching for, downloading, and then deleting child pornography from his computer." *Id.* at 952. The defendant in *Haymond* explained that he deleted the images or " 'wipe[d]' them by reformatting his hard drive and reinstalling the operating system." *Id.* The Tenth Circuit considered the defendant's sufficiency of the evidence challenge on appeal and held: "this type of volitional downloading entails 'control' sufficient to establish actual possession[,]" and "the evidence . . . was sufficient to permit a reasonable jury to conclude beyond a reasonable doubt that [the defendant] 'knowingly possessed' the charged images." *Id.* at 956-57.

{20}    In the present case, there was ample evidence for a reasonable jury to infer that Defendant knew child pornography was on his computer. Just like the defendant in *Haymond*, Defendant admitted that he searched for, downloaded, watched, and deleted the videos at issue, and Defendant does not dispute that the videos were found in his recycle bin, which does not permanently delete files. Viewing the evidence in

12

the light most favorable to the verdict, we conclude that there was sufficient evidence to permit a reasonable jury to conclude beyond a reasonable doubt that Defendant intentionally possessed child pornography.

**B.      Stipulation**

{21}      Defendant argues that the district court abused its discretion by allowing the State to show pornographic videos found on his computer to the jury despite his offer to stipulate to the fact that the material constituted child pornography. He claims that he objected to the State's request to show the videos to the jury, and instead, offered to stipulate that the videos contained child pornography. He contends that there was no need to inflame the jury by having them watch the videos. The State, however, argues that abuse of discretion is not the proper standard of review in this case. It is the State's position that, although Defendant offered to stipulate that the contents were child pornography, he never objected to having the videos played for the jury. Therefore, the State asks this Court to apply a fundamental error standard of review. *See* Rule 12-216(A) NMRA (2015) (recompiled and amended as 12-321 effective Dec. 31, 2016) ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]").

{22}      The record reflects that, during Agent Peña's testimony, the State offered State's Exhibit 1 into evidence—a disc with the two videos downloaded by Agent

13

Peña from Defendant's Ares shared folder. When asked if there was any objection, defense counsel stated, "No, Your Honor." The State then asked for permission to publish State's Exhibit 1 to the jury, and the district court asked defense counsel if he had any objection. At that time, counsel stated, "The defense [was] prepared to stipulate that the [disc] and the other videos [the State was] intending to show [were], in fact, pornography, within the meaning of the statute." The State did not accept the stipulation, and the district court permitted the State to show the videos to the jury. Similarly, during Detective Hartsock's testimony, defense counsel did not object to the admission of State's Exhibit 2—the disc the forensics laboratory prepared, which included the eight videos found on Defendant's laptop. Additionally, there was no objection to publishing State's Exhibit 2. Because Defendant failed to preserve this issue, "we will reverse only if any error rose to the level of fundamental error." *State v. Herrera*, 2014-NMCA-007, ¶ 4, 315 P.3d 343.

{23}   "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). To determine whether fundamental error exists, we first determine whether an error occurred, and if so, we then determine

whether that error was fundamental to the fairness of the conviction. *See State v. Astorga*, 2015-NMSC-007, ¶ 14, 343 P.3d 1245.

{24} "[W]e do not limit the State's presentation of evidence to the narrow question of what a defendant has expressly put in issue." *State v. Otto*, 2005-NMCA-047, ¶ 30, 137 N.M. 371, 111 P.3d 229 (Pickard, J., dissenting), *rev'd on other grounds*, 2007-NMSC-012, 141 N.M. 443, 157 P.3d 8. In reversing this Court's opinion in *Otto*, 2005-NMCA-047, our Supreme Court agreed with the view expressed in Judge Pickard's dissent. *See Otto*, 2007-NMSC-012, ¶¶ 8, 11-13. "[W]e routinely uphold the admission of gory photographs even though a defendant concedes that the victim is dead or died in a particular way. Moreover, we apply this principle in the context of the admission of Rule 11-404(B) [NMRA] evidence." *Otto*, 2005-NMCA-047, ¶ 30 (Pickard, J., dissenting) (citations omitted).

{25} The content of the videos was relevant to Defendant's charges in this case. *See* Rule 11-401 NMRA ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action."). In order to convict Defendant for possession of child pornography, the State was required to prove beyond a reasonable doubt that the videos were obscene, they depicted a prohibited sexual act, and the participants were children under the age of eighteen. *See* NMSA 1978, § 30-6A-2(A),

15

(E) (2001) (defining "prohibited sexual act" and "obscene"). To establish these elements, the State sought permission to show brief sections of three videos—one during Agent Peña's testimony and two during Detective Hartsock's testimony. As for the first video, only two to three minutes of an eleven-minute video were shown. As for the second and third videos, the State played brief portions while Detective Hartsock described the ages of the children based on their body structure.

{26} While the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice," *see* Rule 11-403 NMRA, we "give much leeway to trial judges who must fairly weigh probative value against probable dangers." *State v. Sena*, 2008-NMSC-053, ¶ 16, 144 N.M. 821, 192 P.3d 1198 (internal quotation marks and citation omitted); *see also State v. Rojo*, 1999-NMSC-001, ¶ 48, 126 N.M. 438, 971 P.2d 829 ("Determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court." (alteration, internal quotation marks, and citation omitted)).

{27} In the instant case, the videos—though graphic in nature—were probative to show Defendant's intent and to refute Defendant's claim that he was viewing the videos for medical research. *See, e.g.*, *Sena*, 2008-NMSC-053, ¶ 17 ("Without hearing the grooming evidence, the jury was more likely to believe that [the d]efendant touched [the c]hild simply for medicinal purposes and less likely to believe that he

16

did so with a sexual intent."). Defendant insisted that he was researching how lesions were formed from sexual intercourse between an adult and a child; however, the portions of the videos that were played for the jury included oral sex between two adults and two girls, oral sex between a young man and a boy, and a close up of a girl's genitalia and her riding a man's shoulders. *See* § 30-6A-2(E) (defining "obscene" as "any material, when the content if taken as a whole: (1) appeals to a prurient interest in sex, as determined by the average person applying contemporary community standards; (2) portrays a prohibited sexual act in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value").

{28}     Given the probative value of the video evidence offered to show Defendant's intent, we cannot characterize the district court's admission of brief portions of the videos "as clearly untenable or unjustified by reason." *Sena*, 2008-NMSC-053, ¶ 17. Therefore, we hold that the district court did not abuse its discretion in allowing the State to show the jury these videos under Rule 11-403. Having determined that the district court did not err in admitting the video evidence, we need not undertake a fundamental error analysis. *See Astorga*, 2015-NMSC-007, ¶ 14.

**III.     CONCLUSION**

{29}     The judgment and sentence is affirmed.

{30}     **IT IS SO ORDERED.**

 

_____
**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**JONATHAN B. SUTIN, Judge**